IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 3:20-cv-00322-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

James B. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. §

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///

///

///

///

## BACKGROUND

**I.   PLAINTIFF'S APPLICATION**

Plaintiff was born in August 1982, making him thirty-two years old on December 16, 2014, the day he filed his application.³ (Tr. 704, 722.) Plaintiff graduated from high school and has no past relevant work experience. (Tr. 223, 722, 959.) In his application, Plaintiff alleged disability due to a traumatic brain injury ("TBI"), seizure disorder, memory loss, and confusion. (Tr. 800.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on August 10, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 704.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 7, 2016. (Tr. 18-39.) On February 16, 2017, the ALJ issued a written decision denying Plaintiff's application. (Tr. 76-91.) On February 13, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) On March 2, 2018, Plaintiff sought judicial review of the ALJ's decision.⁴

On December 18, 2018, a judge in this district issued an Opinion and Order and Judgment reversing and remanding the Commissioner's decision for further proceedings. *See* Case No. 3:18-cv-00379-AA, ECF Nos. 17-18. The district judge explained that the ALJ failed adequately to address lay witness testimony (in particular, a work activity-related questionnaire)

---

³ "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

⁴ Plaintiff filed a second SSI application on May 26, 2018. (Tr. 704.) The ALJ consolidated Plaintiff's SSI applications in response to an Appeals Council order. (*Id.*)

PAGE 3 – OPINION AND ORDER

from Renée Capp ("Capp"), a human resources manager for Oregon Screen Impressions ("OSI"), Plaintiff's part-time employer, because the ALJ did not provide any reasons for failing to account for Capp's testimony. The district judge also explained that the ALJ's error was harmful and further proceedings were necessary because the VE testified that a hypothetical worker with the limitations that Capp described could not perform the jobs the ALJ identified as suitable for Plaintiff, and because it was possible that the VE could identify other suitable jobs for an individual with Plaintiff's limitations.

On October 15, 2019, Plaintiff and a VE appeared and testified at a second administrative hearing. (Tr. 745-62.) On December 23, 2019, the ALJ issued a second written decision denying Plaintiff's application. (Tr. 704-24.) This second appeal to federal court followed on February 27, 2020.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

PAGE 4 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 704-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 16, 2014, the day he filed his application. (Tr. 707.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "[S]eizure disorder and major neurocognitive disorder status post traumatic brain injury; [and an] unspecified depressive disorder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 709.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to these limitations: (1) Plaintiff can occasionally climb ramps and stairs; (2) Plaintiff cannot climb ladders, ropes, or scaffolds; (3) Plaintiff can occasionally balance; (4) Plaintiff "can perform simple, routine, repetitive tasks with a reasoning level of 1 or 2, with one to two-step instructions"; and (5) Plaintiff needs to "avoid all exposure to hazards." (Tr. 711.) At step four, the ALJ concluded that Plaintiff had no past relevant work. (Tr. 722.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could

PAGE 5 – OPINION AND ORDER

perform, including work as a laundry worker, hand packager, and motel/hotel housekeeper. (Tr. 723.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to include all of his credible limitations in the hypothetical question the ALJ posed to the VE. Specifically, Plaintiff argues that the ALJ's VE hypothetical, which was derived from the RFC, failed to account for the limitations that Capp identified in her initial and follow-up testimony. As explained below, the Court agrees and, therefore, reverses the Commissioner's decision and remands for an award of benefits.

### I. THE RFC AND VE HYPOTHETICAL

#### A. Applicable Law

It is well settled that the "hypothetical [question] an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "Thus, an RFC that fails to take into account [all of] a claimant's [credible] limitations is defective." *Id.*; *see also Richardson v. Comm'r of Soc. Sec.*, 588 F. App'x 531, 533 (9th Cir. 2014) (holding that the ALJ did not commit harmful error because he "posed a hypothetical to the vocational expert containing all the limitations [he] found to be credible and supported by the [claimant's] record[s]") (citation omitted).

#### B. Analysis

The Court agrees with Plaintiff that the VE hypothetical and RFC were defective because they failed to include all of Plaintiff's credible limitations, in particular the limitations that Capp identified.

PAGE 6 – OPINION AND ORDER

1.      **Capp's Testimony**

On November 30, 2016, Capp completed work activity and employer questionnaires about Plaintiff's part-time work and performance at OSI. (Tr. 293-96.) Capp stated that Plaintiff started on October 5, 2015; Plaintiff could not complete his duties without special assistance or in the same amount of time as employees in similar positions; and Plaintiff receives special assistance, such as fewer or easier duties, irregular hours, lower production standards, extra help and supervision, less hours, and lower quality standards. (Tr. 293.)

Capp also rated Plaintiff's productivity compared to other employees in "similar positions and similar pay rates," noting that he produces at "60% [the rate] of other employees' productivity." (Tr. 294.) Further, Capp stated that Plaintiff's 60% production rate and need for accommodations have "been in place since employment began"; Plaintiff's work was not satisfactory "when compared to another employee who worked in a similar position"; OSI initially hired Plaintiff as a manual screen printer because an individual from "Employment services for the disabled" asked OSI if it would consider doing so; Plaintiff "had problems with remembering instructions and it took him 60% longer to complete a job"; Plaintiff needed "constant supervision" and "several reminders of the job at hand throughout the day"; Plaintiff "would forget important information," "at times looks confused," and is "unable to remember his day-to-day activities"; and Plaintiff worked at a slower pace and produced "lower quality" work. (Tr. 294-96.)

On September 9, 2019, Capp sent a letter to the ALJ that expanded on Capp's prior testimony. (Tr. 1039.) In the letter, Capp explained that her "opinions from 2016 remain the same"; OSI provided Plaintiff with "accommodations at work including fewer and easier duties, lower production standards, extra supervision and lower quality standards because he has a brain injury"; OSI moved Plaintiff "through three positions" (screen printer, warehouse worker, and

PAGE 7 – OPINION AND ORDER

cleaner), which got progressively "easier," because Plaintiff was "incapable of the work, even with accommodations"; and OSI "had to let [Plaintiff] go in May 2019." (Tr. 1039.) Capp also explained that over the last six months or so of Plaintiff's employment, it became clear to OSI that Plaintiff was "incapable" of performing the easiest/accommodated cleaner job, as Plaintiff "would frequently ask his boss to repeat instructions for even simple cleaning tasks—sometimes more than once for the same task in the same day," there "were some cleaning tasks, such as cleaning the windows, that [OSI] could never teach [Plaintiff] to perform correctly," Plaintiff was "incapable of learning the steps and executing them," and regardless of the assigned task, Plaintiff's overall "production was more than 20% slower than other [OSI] employees." (*Id.*)

### 2. The VE's Testimony at the Second Hearing

At the second hearing, the ALJ presented one hypothetical question to the VE based on the above RFC, which prompted the VE to identify the laundry worker, hand packager, and motel/hotel housekeeper jobs as suitable for Plaintiff, and allowed Plaintiff's counsel to ask questions. (Tr. 756-58.) In response to Plaintiff's counsel's first question, the VE testified that there would not be "any competitive jobs" for a hypothetical worker who needed "accommodations," such as "special assistance" or "fewer and easier job duties." (Tr. 758-59.) Plaintiff's counsel also asked about a hypothetical worker who was "only 80% as productive as other workers[.]" (Tr. 759.) The VE responded that if a hypothetical worker was "only meeting [eighty percent] of overall production, compared to the good average normal worker, or less, then that person would not be competitive" in the employment market. (Tr. 759.)

### 3. The ALJ's Treatment of Capp's Testimony

The ALJ addressed Capp's testimony on page nineteen of her decision. (Tr. 722.) After describing Capp's testimony, including the testimony about Plaintiff's productivity and need for accommodations like assistance, extra help and supervision, fewer or easier duties, lower quality

PAGE 8 – OPINION AND ORDER

and production standards, and irregular and fewer hours, the ALJ stated that Capp's testimony "provide[s] helpful details about the claimant's functioning at work, and are given weight." (*Id.*) The ALJ then suggested that she accounted for Capp's testimony by "limiting the claimant to simple, routine, repetitive tasks with a reasoning level of 1 or 2, with one to two-step instructions," and stated "[t]hese limitations are designed to avoid [any] need for excessive supervision and avoid difficulty with more complex tasks or learning a multitude of varying tasks." (*Id.*)

### 4.   Disposition

The ALJ's treatment of Capp's testimony amounted to harmful error. The ALJ gave weight to and did not discount Capp's testimony, which reflected that Plaintiff requires special accommodations at work. The VE's testimony demonstrates that the need for special accommodations alone would preclude Plaintiff from full-time work.[5] However, Capp further testified that even with special accommodations in his last part-time position as a cleaner, Plaintiff remained more than 20% slower than the other employees (and was ultimately terminated), and the VE testified that meeting only 80% of a typical employee's production would also preclude competitive employment. The ALJ did not include the special accommodation or productivity limitations in Plaintiff's RFC and VE hypothetical.

The Court concludes that the ALJ erred by failing to include all of Plaintiff's credible limitations, in particular the limitations Capp identified and the ALJ credited, in the RFC and VE hypothetical. The ALJ's step five findings were therefore erroneous because they were based on

---

[5] Plaintiff points out that the part-time job for which he required and received special accommodations (and still was terminated for performance issues) carries a Specific Vocational Preparation Level of 2 and a Reasoning Level of 2, which is the same as the three jobs the ALJ identified that Plaintiff could perform on a full-time basis without accommodation. (*See* Pl.'s Reply Br. at 3-4.)

PAGE 9 – OPINION AND ORDER

a flawed RFC and VE hypothetical. Had the RFC and VE hypothetical included the limitations identified by Capp, a finding of disability would necessarily follow based on the VE's testimony. Accordingly, the ALJ's error was not harmless.

## II.     REMEDY

### A.     Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of Social Security cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing, *inter alia*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007)).

The credit-as-true standard is met if three conditions are satisfied: (1) "the record has been fully developed and further administrative proceedings would serve no useful purpose," (2) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

///

///

PAGE 10 – OPINION AND ORDER

B.  Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate. The record is fully developed, specifically with respect to Capp's testimony and the VE's opinion that the limitations Capp identified would preclude full-time work. The ALJ already credited Capp's testimony, and would therefore be required to find Plaintiff disabled on remand.

The Commissioner opposes a remand for benefits on three grounds. First, the Commissioner argues that "there remain serious doubts" about whether Plaintiff is disabled. (Def.'s Br. at 4.) In support of this argument, the Commissioner identifies no specific doubt, but cites generally to section one (i.e., pages two through four) of his response brief. This section of the Commissioner's brief raises no such doubt in the Court's mind, as it fails to address the most significant VE testimony post-initial remand and does not demonstrate that the RFC accounted for Capp's testimony.

The Commissioner also argues that a "finding of disability is not inevitable, as indicated by this Court's" decision in December 2018, and that unspecified "factual determinations" still need to be "made by the ALJ, rather than the Court[.]" (Def.'s Br. at 5.) The Court disagrees. There are no outstanding issues or factual determinations that need to be resolved, as it is clear based on Capp's testimony and the VE's opinions that there is no job Plaintiff can perform that exists in significant numbers in the national economy.[6]

---

[6] Nor does the Court believe another mulligan is appropriate here. *See Garrison*, 759 F.3d at 1021 ("[O]ur precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.") (citation omitted). The Court remanded this case in 2018 with instructions to the ALJ to include the limitations identified by Capp in the RFC and VE hypothetical. (Tr. 796.) The ALJ failed to do so. Almost three years

The credit-as-true standard is met here, and the Court does not have serious doubt about whether Plaintiff is disabled. Accordingly, the Court reverses the Commissioner's decision and remands for an award of benefits.

## CONCLUSION

For these reasons, the Court REVERSES the Commissioner's decision and REMANDS for an award of benefits.

**IT IS SO ORDERED.**

DATED this 20th day of September, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

have passed, and remanding the case again with the same instruction would serve no useful purpose.

PAGE 12 – OPINION AND ORDER